UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| ANDRE JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:13-1123 |
| | ) | Judge Sharp |
| TERRI L. SMITH-JOHNSON, | ) | |
| JEREMY MOSELY, LAURA THOMAS | ) | |
| AND THE METROPOLITAN | ) | |
| GOVERNMENT OF NASHVILLE | ) | |
| AND DAVIDSON COUNTY, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM**

Pending before the Court are the fully-briefed Motions to Dismiss filed by Defendants Jeremy Mosely and Laura Thomas (collectively "the Defendant Officers") (Docket No. 14) and by Defendant Metropolitan Government of Nashville and Davidson County ("Metro") (Docket No. 19). The Defendant Officers' Motion will be granted in part and denied in part, while Metro's Motion will be granted in its entirety.

**I. FACTUAL ALLEGATIONS**

Because the specific allegations are critical to this Court's resolution of the pending motions, the Court quotes them in some detail as follow:

Plaintiff Andre Johnson is a former police officer for Metro. Defendants include his now-estranged wife, Terri L. Smith -Johnson; Defendant Officers Jeremy Mosely and Laura Thomas, both of whom are Nashville police officers; and Metro.

On October 10, 2012, Ms. Smith-Johnson "took out an arrest warrant against Plaintiff

1

alleging domestic violence," for an "incident of domestic violence [that] took place in February 2012." (Docket No. 1, Complaint ¶ 6). "As part of her evidence" in securing the warrant, Ms. Smith-Johnson "relied on medical records showing that she went to the hospital for treatment on February 10, 2012," but that treatment "was for constipation and not a battery." (Id. ¶¶ 8 & 9). "Plaintiff was arrested pursuant to the allegations made by Defendant Smith-Johnson in her arrest warrant" on the same day the warrant was issued. (Id.).

"On October 19, 2012, Defendant Smith-Johnson issued a second arrest warrant for Plaintiff for a domestic violence incident" which was alleged to have taken place outside of Plaintiff's residence, and during which Ms. Smith-Johnson "claimed she was screaming loudly[.]" (Id. ¶¶ 11-12). "When arresting Plaintiff pursuant to the second warrant, Defendants Mosely and Thomas relied on both the statement of Defendant Smith-Johnson and also a hospital report from Summit Medical Center that notes Defendant Smith-Johnson's injuries." (Id. ¶ 11). That report, "reviewed by Defendants [Mosely and Thomas] prior to arresting Plaintiff states that Defendant Smith-Johnson ha[d] previously filed a report of domestic assault against Plaintiff in April 2012," but both officers knew "that Plaintiff had not previously been charged with or arrested for domestic assault in April 2012." (Id. ¶¶ 14-15). Further, even though the Nashville Police Department has "an electronic database of all incident reports, arrest warrants and charges" to which Officers Mosely and Thomas had access, they did not check that "database to determine the veracity of Defendant Smith-Johnson's statements to Summit Medical Center concerning an April 2012 arrest." (Id. ¶¶ 16-17). Nor did the officers interview neighbors to determine whether "they heard the Defendant Smith-Johnson's alleged screams [that] she emitted during the alleged domestic violence incident outside Plaintiff's home." (Id. ¶ 20). Additionally, "[i]t is the policy and/or custom" of the Nashville Police

2

Department "to decommission officers charges [sic] with domestic violence," yet the Defendant officers knew that Plaintiff was still a commissioned police officer at the time he was arrested. (Id. ¶¶ 18-19).

"Following the second arrest, Defendant Smith-Johnson obtained an order of protection against Plaintiff stating that he had assaulted her on April 27, 2012, two days later than the date Defendants alleged in the arrest warrant." (Id. ¶ 22). "Despite this significant inconsistency, Defendants still elected to prosecute Plaintiff." (Id.). Plaintiff was acquitted of the criminal charges on February 21, 2013. In March 2013, he was cleared of charges brought by the police department.

With regard to Metro, Plaintiff alleges:

> Legal bulletin 79-17 of the police department of the Metropolitan Government of Nashville and Davidson County requires police officers to consider all factors in an investigation when determining whether there is probable cause to make an arrest. Metro failed to train its officers on how to conduct this type of investigation in accordance with this legal bulletin.

(Id. ¶ 21).

Plaintiff brings federal claims for alleged violations of the Fourth and Fourteenth Amendments, and state law claims for malicious prosecution and the intentional infliction of emotional distress. Defendants seek dismissal of all claims.

## II. LEGAL DISCUSSION

Plaintiff's federal claims, alleging violations of the Fourth and Fourteenth Amendments, are brought pursuant to 42 U.S.C. § 1983, which, so far as relevant, provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

3

42 U.S.C. § 1983. In order to state a claim under this statute, "a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and must show that the deprivation of that right was committed by a person acting under color of state law." Harbin-Bey v. Rutter, 420 F.3d 571, 574 (6th Cir. 2005). Here, there is no dispute that Officers Mosely and Thomas were acting under color of state law in relation to the allegations in the Complaint. Thus, the questions become whether those officers deprived Plaintiffs of a clearly established constitutional right and, if so, whether Metro is also liable for that deprivation.

A. **Motion to Dismiss by the Defendant Officers (Docket No. 14)**

   *1. Fourteenth Amendment Claim*

In response to the Motion to Dismiss filed by filed by the Defendant Officers, "Plaintiff concedes that his 14th Amendment claim should be dismissed against these Defendants." (Docket No. 25-1 at 9). Accordingly, Plaintiff's' Fourteenth Amendment claim against Officers Mosely and Thomas will be dismissed.

   *2. Fourth Amendment Claims*

Plaintiffs bring Fourth Amendment claims against Officers Mosely and Thomas for false arrest and malicious prosecution. With regard to both, those Defendants have raised the defense of qualified immunity.

Qualified immunity is an affirmative defense which shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The qualified immunity inquiry involves determining (1) whether a constitutional violation occurred and (2) whether the right infringed was

4

clearly established. McKinley v. City of Mansfield, 404 F.3d 418, 429-30 (6th Cir. 2005). A court is to use its "sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 236 (2009).

"When the defense of qualified immunity is raised, it is the plaintiff's burden to prove that the state officials are not entitled to qualified immunity." Ciminillo v. Streicher, 434 F.3d 461, 466 (6th Cir. 2006). Preliminarily, "plaintiff has the burden of showing that a right is clearly established." Everson v Leis, 556 F.3d 484, 494 (6th Cir. 2009).

### a. False Arrest Claim

"The federal right to be subject only to arrest upon probable cause [i]s clearly established." Everson v. Leis, 556 F.3d 484, 500 (6th Cir. 2009). "Probable cause is a fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213, 232 (1983).

Here, Plaintiff was arrested pursuant to a warrant. The Supreme Court has held:

> Where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or, as we have sometimes put it, in "objective good faith." . . . Nonetheless, under our precedents, the fact that a neutral magistrate has issued a warrant authorizing the allegedly unconstitutional search or seizure does not end the inquiry into objective reasonableness. Rather, we have recognized an exception allowing suit when "it is obvious that no reasonably competent officer would have concluded that a warrant should issue." . . . The "shield of immunity" otherwise conferred by the warrant . . . will be lost, for example, where the warrant was "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."

Messerschmidt v. Millender, 132 S. Ct. 1235, 1245 (2012) (footnote and internal citations omitted). The Court went on to explain that its "precedents make clear, however, that the threshold for

5

establishing this exception is a high one, and it should be," because "'in the ordinary case, an officer cannot be expected to question the magistrate's probable cause determination" for "[i]t is the magistrate's responsibility to determine . . . probable cause, and, if so, to issue a warrant comporting in form with the Fourth Amendment." Id. (quoting United States v. Leon, 468 U.S. 897, 921 (1984)). The Court concluded by observing that the question "is not whether the magistrate erred in believing there was sufficient probable cause," but "[i]t is instead whether the magistrate so obviously erred that any reasonable officer would have recognized the error. The occasions on which this standard will be met may be rare, but so too are the circumstances in which it will be appropriate to impose personal liability on a lay officer in the face of judicial approval of his actions." Id. at 1250.

Plaintiff has not pled any facts from which this Court could conclude that this is the rare case. He does not allege that the warrant was invalid or that either of the Defendant Officers provided any information to the judicial commissioner who signed the warrant. Nor does he allege that either officer had any active role in procuring the warrant. What he does allege is that the Defendant Officers served a warrant taken out by someone else and issued by a judicial officer.

Further, Plaintiff does not allege any reasonable officer would have concluded that the warrant was invalid, nor does he cite any authority for the proposition that officers are required to independently investigate the allegations which serve as a basis for the warrant, or ignore a warrant that has been issued. This is important because a right is "clearly established" for qualified immunity purposes only if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted," and this inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Saucier v. Katz, 533 U.S. 194, 201 (2001). "If no

reasonably competent officer would have taken the same action, then qualified immunity should be denied; however, 'if officers of reasonable competence could disagree on [the legality of the action], immunity should be recognized.'" Humphrey v. Mabry, 482 F.3d 840, 847 (6th Cir. 2007) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). After all, "'[t]he concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct' Saucier, 533 U.S. at 205" and to "protect[] 'all but the plainly incompetent or those who knowingly violate the law[,]' Malley, 475 U.S. at 341." Id. at 847.

Moreover, "[o]nce the defendant raises a qualified-immunity defense, the burden shifts to the plaintiff to demonstrate both that the challenged conduct violated a constitutional or statutory right, and that the right was so clearly established at the time of the conduct 'that every reasonable official would have understood that what he [was] doing violate[d] that right.'" T.S. v. Doe, 742 F.3d 632, 635 (6th Cir. 2014) (quoting Ashcroft v. al–Kidd, 131 S. Ct. 2074, 2083 (2011)). Plaintiff does not even attempt to make that showing in response to the Defendant Officers' request for the dismissal of the false arrest claim.

### b. Malicious Prosecution Claim

"The tort of malicious prosecution is entirely distinct from that of false arrest, as the malicious-prosecution tort remedies detention accompanied not by absence of legal process, but by wrongful institution of legal process." Sykes v. Anderson, 625 F.3d 294, 307 (6th Cir. 2010). "The Sixth Circuit 'recognize[s] a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment,' which 'encompasses wrongful investigation, prosecution, conviction, and incarceration.'" Id. (quoting Barnes v. Wright, 449 F.3d 709, 715–16 (6th Cir. 2006)). "To succeed on a Fourth Amendment malicious prosecution claim under § 1983 . . . , a plaintiff must prove the following: (1) a criminal prosecution was initiated against the plaintiff and the defendant

7

made, influenced, or participated in the decision to prosecute; (2) there was no probable cause for the criminal prosecution; (3) as a consequence of the legal proceeding, the plaintiff suffered a deprivation of liberty apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor." Robertson v. Lucas, ___ F.3d ___, ___, 2014 WL 2198419, at *6 (6th Cir. May 28, 2014).

Resolution of Plaintiff's malicious prosecution claim is a bit more difficult than his false arrest claim. As a preliminary matter, the Court notes that warrants are supposed to be issued only on a showing of probable cause and "[p]robable cause is [an] essential element in a malicious prosecution claim." Legenzoff v. Steckel, 2014 WL1613305, at *11 (6th Cir. April 23, 2014). However, "warrant affidavits are to be judged on the totality of the circumstances," Gates, 462 U.S. at 213, even where probable cause originally exists "there can be liability for the malicious continuation of a criminal proceeding," Pera v. Kroger Co., 674 S.W.2d 715, 722 (Tenn. 1984). Plaintiff alleges that probable cause did not exist and further that Defendants continued to prosecute Plaintiff notwithstanding the discrepancy in dates between the order of protection and the second arrest warrant, and the Defendant Officers do not move to dismiss based upon the existence of probable cause.

Rather, the Defendant Officers move to dismiss the malicious prosecution claim because there are insufficient allegations relating to their role in pursuing the prosecution. They point out that while Plaintiff alleges that they "pressed" the district attorney to prosecute, he does not allege "how the Defendant Officers pressed for prosecution" or "even allege[] that either Defendant Officer testified at [Plaintiff's] trial." (Docket No. 15 at 7-8).

This matter is before the Court on a Motion to Dismiss. The Sixth Circuit has reviewed the standards governing such motions when the qualified immunity defense is raised:

8

> To survive a motion to dismiss, a plaintiff must allege facts that, if accepted as true, are sufficient to "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). In reviewing a motion to dismiss, [the court] "construe[s] the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." Bassett v. Nat'l Collegiate Athletic Ass'n, 528 F.3d 426, 430 (6th Cir. 2008). Dismissal based on qualified immunity is appropriate if the complaint fails to allege the violation of a constitutional right that is clearly established. Hardy v. Jefferson Comm. Coll., 260 F.3d 671, 677 (6th Cir. 2001).

Jasinski v. Tyler, 729 F.3d 531, 538 (6th Cir. 2013).

"[A]n individual has a constitutional right to be free from malicious prosecution," a right that "was clearly established well before" 1999. Spurlock v. Satterfield, 167 F.3d 995, 1006 n.19 (6th Cir. 1999). True, the Complaint is lacking in many details, but it is at least minimally sufficient to state a malicious prosecution claim and places the Defendant Officers on notice of that claim. See Rhodes v. R & L Carriers, Inc., 491 F. App'x 579, 583 (6th Cir. 2012) (citation omitted) ("Although Twombly and Iqbal clarified that a complaint must state a plausible claim – not just a possible claim – [the Sixth Circuit] has cautioned against reading 'Twombly and Iqbal so narrowly as to be the death of notice pleading[.]'"). Further, "[b]ecause a plaintiff cannot sustain a § 1983 . . . claim without a showing of personal responsibility on the part of the defendant, see Iqbal, 556 U.S. at 676, [plaintiff's] Fourth Amendment claims—and the accompanying qualified immunity defenses—turn[] in large part on the individual actions of the defendants in this case." Robertson v. Lucas, 2014 WL 2198419, at *14 (6th Cir. May 28, 2014). That is something only discovery will reveal.

In this regard, the Defendant Officers' extensive reliance on Sykes is misplaced. True, as they point out, the Sixth Circuit stated that "[w]hether an officer influenced or participated in the decision to prosecute hinges on the degree of the officer's involvement and the nature of the

9

officer's action." Sykes, 625 F.3d at 311 n.9. It is also true that the Sixth Circuit went on to note that "for purposes of a malicious-prosecution claim, the Plaintiffs were required to present evidence" which showed "deliberate falsehood or showed reckless disregard for the truth," and that such falseness of reckless was "material" to the outcome. Id. at 312 (quoting Gregory v. City of Louisville, 444 F.3d 725, 758 (6th Cir. 2006)). But Sykes was before the Sixth Circuit after two motions for summary judgment were denied and a trial was held on plaintiffs' malicious prosecution claims. A party is not required to "present evidence" in his Complaint and it seems clear that the "degree of the officer's involvement and the nature of the officer's action" can only be discerned after some limited discovery.

### 3. *State Law Claims*

The elements of a claim for malicious prosecution under Tennessee law are similar to those under federal law. To support such a claim, a plaintiff must establish that "(1) the defendant had instituted a prior suit or judicial proceeding without probable cause, (2) the defendant brought such prior action with malice, and (3) the prior action was finally terminated in plaintiff's favor." Meeks v. Gasaway, 2013 WL 6908942, at *4 (Tenn. Ct. App. Dec. 30, 2013) (citing Himmelfarb v. Allain, 380 S.W.3d 35, 38 (Tenn. 2012)). Further, Tennessee courts apply qualified or good faith immunity to state law torts, see Youngblood v. Clepper, 856 S.W.2d 405, 408 (Tenn. Ct. App. 1993), a doctrine that "is premised in large part on the reasonableness of the officer's actions," Cawood v. Booth, 2008 WL 4998408, at *12 (Tenn. Ct. App. Nov. 25, 2008). Therefore, and for the reasons already discussed, the Court will not dismiss the malicious prosecution claim at this time.

As for the intentional infliction of emotional distress claim, dismissal is warranted for two reasons. First, the Complaint's allegations are little more than a listing of the elements of a cause of action for such a claim. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does

10

not need detailed factual allegations . . . , a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Twombly, 550 U.S. at 555 (citation omitted).

Second, even if the claim is sufficiently plea, it fails as a matter of law. Since the tort was first recognized in Tennessee in Medlin v. Allied Inv. Co., 398 S.W.2d 270, 274 (1966), the Tennessee Supreme Court has determined that claims for the intentional infliction of emotional distress are viable only upon a showing of truly outrageous and intolerable conduct. Miller v. Willbanks, 8 S.W.3d 607, 614 (Tenn. 1999). "Although no perfect legal standard exists for determining whether particular conduct is so intolerable as to be tortious," the Tennessee Supreme Court "has adopted and applied the high threshold standard described in the Restatement (Second) of Torts":

> The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous.'

Bain v. Wells, 976 S.W.2d 618, 622 (Tenn. 1997) (quoting RESTATEMENT (SECOND) OF TORTS § 46 comment d (1965)). "[I]t is the court's duty in the first instance to apply that standard and determine 'whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery[.]'" Id. (quoting, Medlin, 398 S.W.2d at 274).

Failing to conduct an investigation prior to executing an arrest warrant is not outrageous conduct. Arresting someone pursuant to a warrant sworn to by another and signed by a judicial

11

officer is also not outrageous conduct. Nor is "pressing" a prosecutor to prosecute an individual whose wife has taken out a warrant against him for spousal abuse outrageous conduct. None of these things, either singularly or in combination, are "so outrageous in character, and so extreme in degree, as to be beyond the pale of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." Meeks, 2013 WL 6908942, at *7.

**B. Motion to Dismiss by Metro (Docket No. 19)**

Plaintiff sues Metro under a failure-to-train theory. In Monell v. Department of Social Services, 436 U.S. 658, 691 (1978), the Supreme Court held that "a municipality cannot be held liable solely because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." However, "municipalities may be held liable under § 1983 when the injury inflicted is a result of 'a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" Radavansky v. City of Olmstead Falls, 395 F.3d 291, 311 (6th Cir. 2005) (quoting Monell, 436 U.S. at 694).

Plaintiffs' municipal liability claim fails because it alleges that Metro did not properly train its officers to investigate, but this Court is dismissing Plaintiff's false arrest claim which is premised on the allegedly flawed investigation. "If the plaintiff fails to establish a constitutional violation by an individual officer, the local government unit cannot be held liable for a failure to train under § 1983." Crocker v. County of Macomb, 119 F. App'x 718, 724 (6th Cir. 2005); see also Estate of Harbin v. City of Detroit, 147 F. App'x 566, 572 (6th Cir. 2005) ("we have repeatedly declined to examine whether a municipal defendant provided its jail officers with adequate training when the plaintiff-detainee failed to present sufficient evidence of an underlying constitutional tort").

In addition, dismissal of the failure to train claim is appropriate because it is has not been

12

sufficiently pled. While "[t]he courts recognize a systematic failure to train police officers adequately as custom or policy which can lead to city liability," Gregory v. City of Louisville, 444 F.3d 725, 753 (6th Cir. 2006), "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train," Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011). "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." City of Canton v. Harris, 489 U.S. 378, 390-91 (1989). "In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident." Id. at 392. Therefore, and because any "lesser standards of fault and causation would open municipalities to unprecedented liability under § 1983," id. at 391, "a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact,'" Connick, 131 U.S. at 1359 (citation omitted). As a consequence, "[t]o establish a failure to train claim, a complaint must set forth sufficient facts connecting the victim's injury with a municipal policy, custom or practice and it must allege that the defendants' 'failure to train amount[ed] to deliberate indifference to the rights of' the [plaintiff]." Moreno v. Metropolitan General Hosp., 2000 WL 353537, *2 (6th Cir. Mar. 28, 2000) (quoting City of Canton v. Harris, 489 U.S. 378, 388 (1989)).

Plaintiff's Complaint is woefully deficient for purposes of a failure to train claim. All he alleges is that "Metro failed to train its officers on how to conduct this type of investigation in accordance with" Legal Bulletin 79-17 – a bulletin which may in fact be inapposite because Metro claims that it relates to warrantless arrest. Regardless, the Complaint does not set forth any facts which would connect his injury to the alleged failure to train officers in accordance with the legal

13

bulletin, facts which would suggest that Metro had any knowledge of a deficiency, or facts which would suggest that the alleged failure to train amounted to a deliberate indifference of his rights. Simply put, the Complaint must state a plausible claim for recovery and it does not as to Metro on the failure to train claim. See Scrap Yard, LLC v. City of Cleveland, 513 F. App'x 500, 505 (6th Cir. 2013) (dismissal appropriate where plaintiff did "not specify in what way training was lacking, or how the failure to train may have resulted in damage"); Okolo v. Metro. Gov't of Nashville, 892 F. Supp. 2d 931, 944 (M.D. Tenn. 2012) (dismissing failure to train and "declin[ing] to accept as true formulaic recitations of the elements of a cause of action and supporting conclusory statements"); Birgs v. City of Memphis, 686 F. Supp. 2d 776, 780 (W.D. Tenn. 2010) (dismissing failure to train claims where Plaintiff failed to meet burden of pleading more than conclusory statements).

Finally, Plaintiff brings the same state law claims against Metro as he does against the Defendant Officers. In response to Metro's Motion, however, he concedes that his claims against it for false arrest, malicious prosecution, and intentional infliction of emotional distress should be dismissed. (Docket No. 26-1 at 9).

## III. CONCLUSION

On the basis of the foregoing, the Defendant Officers' Motions to Dismiss will be granted except with respect to Plaintiff's federal and state law claims for malicious prosecution. Defendant Metro's Motion will be granted and that Defendant will be dismissed.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE